IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JESSIE SCOTT,            :

      Petitioner,       :

vs.               : CIVIL ACTION NO. 08-0467-LAC

UNITED STATES OF   : CRIMINAL ACTION NO. 04-0226-LAC
AMERICA,

                :

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, Jessie Scott, a federal prison inmate proceeding *pro se*, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 49). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). It is recommended that Scott's § 2255 motion be denied.

## FINDINGS OF FACT

1.     On November 17, 2004, Scott was charged in a six count indictment with threatening a federal official in violation of 18 U.S.C. § 115(a)(1)(B) (Count 1); mailing threatening communications in violation of 18 U.S.C. § 876(c) (Counts 2 & 6); threatening the use of weapons of mass

destruction against a person in violation of 18 U.S.C. § 2332a(a)(2) (Count 3); threatening the use of weapons of mass destruction against property owned by the United States in violation of 18 U.S.C. § 2332a(a)(3) (Count 4); and threatening to kidnap a member of the immediate family of a federal official in violation of 18 U.S.C. § 115(a)(1)(A) (Count 5). (Doc. 1)

2. On January 11, 2005, Scott, through his attorney, filed notice of his intent to plead guilty to Count One of the indictment charging a violation of 18 U.S.C. § 115(a)(1)(B). (*See* Doc. 6)

3. On January 19, 2007, the parties filed a factual resume in open court as part of the guilty plea proceeding. (Doc. 8; *see also* Doc. 21 (guilty plea hearing transcript from January 19, 2005)) The Factual Resume, which Scott signed, reads, in relevant part, as follows:

### ELEMENTS OF THE OFFENSE

Title 18, United States Code, Section 115(a)(1)(B):

First: The defendant threatened to murder a United States Judge to wit: United States District Court Judge Charles R. Butler

Second: The defendant made said threats with the intent to retaliate against United States District Judge Charles R. Butler on account of the performance of his official duties[.]

**JESSIE SCOTT** admits that the allegations in Count One of the Indictment filed in this case are substantially true and correct and states as follows:

This statement is a general description of criminal conduct that I participated in during the time frame as outlined in the Indictment in the Southern District of Alabama and elsewhere.

**JESSIE SCOTT** was convicted of the federal offense of Carjacking in the Southern District of Alabama in 2001. **JESSIE SCOTT** was sentenced by United States District Court Judge Charles R. Butler to 60 months confinement in that case. **JESSIE SCOTT** did not approve of [the] sentence he received from Judge Butler.

On or about September 13, 2004, **JESSIE SCOTT** knowingly and willfully mailed, via the United States Postal Service, an envelope containing a letter addressed to United States District Court Judge Charles R. Butler. The envelope was specifically addressed to "Judge: Butler" at the United States District Court courthouse at 113 St. Joseph Street, Mobile, Alabama.

The letter contained words to include, "So U (sic) need to watch Your back Every Step Of The Way . . . I Will Get you Killed One Day." The letter was written by **JESSIE SCOTT** with the specific intent to threaten to murder Judge Butler. The threatening letter was also written by **JESSIE SCOTT** with the specific intent to retaliate against Judge Butler on account of the performance of his official duties in that in 2001 Judge Butler sentenced **JESSIE SCOTT** to a term of imprisonment of 60 months for the offense of Carjacking. At all times during the offenses charged, the defendant acted knowingly and willfully.

The parties do not have an agreement whether there is sufficient evidence of the offense involving any conduct evidencing an intent by **JESSIE SCOTT** to actually carry out such threat in accordance with U.S.S.G. § 2A6.1(b)(1) and whether the [] offense resulted in (A) substantial disruption of public, governmental, or business functions or services; or (B)

3

a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense in accordance with U.S.S.G. § 2A6.1(b)(4). The parties are free to represent their respective positions on these matters at sentencing. Of course the parties recognize that the Court is not bound by the Federal Sentencing Guidelines and the Guidelines provide merely advisory guidance to the Court.

(Doc. 8, at 1-3) Scott entered a counseled guilty plea to Count One of the

Indictment that same date. (Doc. 21, Guilty Plea Transcript)

> THE COURT:      I need to tell you that you're all under oath. If you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury for making a false statement. Do you understand that, . . . Mr. Scott?

> DEFENDANT SCOTT:      Yes, sir.

>                            .        .        .

> THE COURT:      All right. And Mr. Scott, would you state your true, full name for the record, please.

> DEFENDANT SCOTT:      Jessie Scott.

> THE COURT:      And how old are you?

> THE DEFENDANT:      21.

>                            .        .        .

> THE COURT:      How much education have you completed?

> THE DEFENDANT:      I made it to the twelfth.

.    .    .

THE COURT:         All right. Ms. Hillman, to the best of your knowledge, is Mr. Scott fully competent to enter a valid plea today:

MS. HILLMAN:       He is, Your Honor.

THE COURT:         And Mr. Scott, have you ever been treated for any mental illness or addiction to narcotic drugs of any kind?

DEFENDANT SCOTT:       No, sir.

THE COURT:         Are you currently under the influence of any drug or medication or alcoholic beverage?

DEFENDANT SCOTT:       No, sir.

.    .    .

THE COURT:         Mr. Davis, Mr. Scott, Mr. Barnes, have you all received a copy of the indictment in your case, had a full opportunity to read it, to review and discuss it with your attorney, and do you understand the charge against you? . . . Mr. Scott?

DEFENDANT SCOTT:       Yes, sir.

.    .    .

THE COURT:         . . . Mr. Scott, are you fully satisfied with the representation you've received from Ms. Hillman, your attorney in this case?

DEFENDANT SCOTT:       Yes, sir.

.    .    .

5

THE COURT:        Okay. And Mr. Scott, there's what's called a Factual Resume (indicating). It appears to have your signature on page three (indicating). Did you, in fact, sign the document?

DEFENDANT SCOTT:      Sir?

THE COURT:        Did you sign the document?

DEFENDANT SCOTT:      Yes, sir.

THE COURT:        And by signing this document, you are acknowledging that you have read it, you understand it, and you agree with the information contained in it?

DEFENDANT SCOTT:      Yes, sir.

.        .        .

THE COURT:        And for all of you, Mr. Davis, Mr. Scott, and Mr. Barnes: Has anyone attempted in any way to force you to plead guilty or to pressure you or threaten you in any way? . . . Mr. Scott?

DEFENDANT SCOTT:      No, sir.

.        .        .

THE COURT:        And for Mr. Scott, Count One and Six, Count One, up to six years of imprisonment, a $250,000 fine, a three-year supervised release term, and a hundred-dollar special assessment. Count Six carries punishment up to 10 years in prison, $250,000 fine, a three-year supervised release term, and a hundred-dollar special assessment. Do you understand that those are the penalties that –

MS. HILLMAN:      Your Honor, Mr. Scott is only pleading to Count One.

6

THE COURT:        Oh, okay.

MR. MAY:   That's correct, Your Honor. **And also, the penalty page of the indictment is incorrect. The actual maximum sentence on Count One is 10 years imprisonment.**

THE COURT:        Okay. So . . . you are pleading only to Count One of the indictment?

MS. HILLMAN:       That's correct, Your Honor.

THE COURT:        Okay. 10 years, $250,000 fine?

MR. MAY:   Yes, Your Honor.

THE COURT:        Three-year supervised release term?

MR. MAY:   Yes, Your Honor.

THE COURT:        And   a   hundred-dollar special assessment. Mr. Scott, do you understand that those are the penalties that could be imposed?

DEFENDANT SCOTT:      Yes, sir.

.        .        .

THE COURT:        All right. Mr. Davis, Mr. Scott, Mr. Barnes: During a period of supervised release, you must comply with a set of conditions which will be explained to you by a probation officer. Those conditions will include requirements that you obey the law, that you report as required to the probation officer, and other conditions. If the Court finds that you violated any of those conditions, you could be required to serve additional prison time. Do you understand that . . . Mr. Scott?

DEFENDANT SCOTT:      Yes, sir.

7

.　　　.　　　.

THE COURT:　　　Is Mr. Davis or Mr. Scott or Mr. Barnes, are they presently on probation, parole, or supervised release in any other case that could be subject to revocation if convicted in this case? . . . Mr. Scott?

MS. HILLMAN:　　No, Your Honor.

.　　　.　　　.

THE COURT:　　　Okay. Mr. Davis, Mr. Scott, Mr. Barnes, if you are convicted of the charge in your case, you may lose valuable rights, including the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. If it's a drug offense, you could lose certain Federal benefits. Do you understand that . . . Mr. Scott?

DEFENDANT SCOTT:　　Yes, sir.

.　　　.　　　.

THE COURT:　　　Any forfeiture matters to be discussed?

MS. HILLMAN:　　No, Your Honor.

.　　　.　　　.

THE COURT:　　　All right. Mr. Davis, Mr. Scott, Mr. Barnes, the United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case. Have you and your attorney talked about how those guidelines might affect your case, . . . Mr. Scott?

DEFENDANT SCOTT:　　Yes, sir.

.     .     .

THE COURT:       The way in which the Sentencing Guidelines apply to your case might be affected by what you say to the Court and to the probation officer. The Court will not be able to determine the appropriate sentence for your case until after a presentence report has been completed and you and the United States have had an opportunity to challenge the facts reported by the probation officer. Do you understand that, . . . Mr. Scott?

DEFENDANT SCOTT:       Yes, sir.

.     .     .

THE COURT:       The sentence imposed might be different from any estimate your attorney or anyone else might have given you. Do you understand that, . . . Mr. Scott?

DEFENDANT SCOTT:       Yes, sir.

.     .     .

THE COURT:       After it has been determined what guideline applies to the case, the judge has the authority to impose a sentence that is more severe or less severe than the sentence called for in the Guidelines. Do you understand that, . . . Mr. Scott?

DEFENDANT SCOTT:       Yes, sir.

.     .     .

THE COURT:       Under some circumstances, you and the United States each may have the right to appeal any sentence the judge imposes. For instance, you can appeal your conviction if you believe your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the

proceedings that was not waived by your guilty plea. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law. With few exceptions, any notice of appeal must be filed within 10 days of judgment being entered in your case. If you are unable to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis. Do you understand that, . . . Mr. Scott?

DEFENDANT SCOTT:     Yes, sir.

.          .          .

THE COURT:       Parole has been abolished. If you are sentenced to prison, you will not be released on parole. Do you understand that, . . . Mr. Scott?

DEFENDANT SCOTT:     Yes, sir.

.          .          .

THE COURT:       If the sentence is more severe than you expected, you will still be bound by your plea. Even if you do not like the sentence imposed by the Court, you will not be able to withdraw your plea. The time to make that decision is now. Do you understand that, . . . Mr. Scott?

DEFENDANT SCOTT:     Yes, sir.

.          .          .

THE COURT:       All right. You all have the right to plead not guilty to any offense charged against you and to persist in that plea. You would then have the right to a trial by jury. During that trial, you would have the right to assistance of counsel in your defense, the right to see and hear all the witnesses and to have your attorney cross-examine them, the right to testify yourself or to decline to testify and remain silent, and the right to have the Court issue subpoenas for any witnesses

10

you wish to call in your defense.

At the trial, you would be presumed to be innocent, and the United States would have the burden of proving that you are guilty beyond a reasonable doubt. Before you could be convicted, all 12 jurors must be convinced that the United States has met that burden.

If you are found guilty after a trial, you would then have the right to appeal that conviction to a higher court, and if you could not afford to pay the cost of an appeal, the Government would pay those costs for you.

Do you understand that, . . . Mr. Scott?

DEFENDANT SCOTT:    Yes, sir.

.        .        .

THE COURT:        If you plead guilty, however, and if the Court accepts that plea, there will be no trial; you will be waiving or giving up your right to a trial and all the other rights that I've just described. Do you understand that, . . . Mr. Scott?

DEFENDANT SCOTT:    Yes, sir.

.        .        .

THE COURT:        And Mr. Scott, I have a Factual Resume that shows that you are pleading to Count One of the indictment, stating a violation of Title 18, USC, Section 115(a)(1)(B). The elements of that offense are that you threatened to murder a United States judge, that is, United States District Court Judge Charles R. Butler; that you made said threats with the intent to retaliate against Judge Butler on account of the performance of his official duties.

Do you understand that those are the elements of the

11

offense to which you are charged?

DEFENDANT SCOTT:     Yes, sir.

THE COURT:     All right. And do you fully understand that if there was a trial on this charge, the United States would be required to present sufficient evidence to prove each of these essential elements beyond a reasonable doubt?

DEFENDANT SCOTT:     Yes, sir.

THE COURT:     Also contained in the Factual Resume is a statement that says that sometime in 2001, you were convicted before Judge Butler, received a sentence and were sentenced by Judge Butler; that on or about September 13th of 2004 that you knowingly and willfully mailed a letter to Judge Butler, and that you wrote the letter with specific intent to threaten to murder Judge Butler, using the language, "So, you need to watch your back every step of the way. I will get you killed one day."

All right. Does the Government have anything you want to add to what's in the Factual Resume with regard to the elements of the offense?

MR. MAY: No, Your Honor, other than that the letter was written with the intent to retaliate against Judge Butler in Judge Butler's official duties of sentencing the Defendant on the carjacking case.

THE COURT:     Ms. Hillman, anything further?

MS. HILLMAN:     I think it's fair to say that Mr. Scott's intent when he wrote the letter was to express displeasure over the exercise of Judge Butler's official function.

THE COURT:     Mr. Scott, did you, in fact, commit the acts and do the things that you have admitted to in this

12

Factual Resume?

       DEFENDANT SCOTT:    Yes, sir.

       THE COURT:    All right. Then I find that the facts and acts to which you have admitted support a violation of the charge contained in Count One of the indictment. How do you now plead to the charge in Count One of the indictment, guilty or not guilty?

       DEFENDANT SCOTT:    Guilty.

       THE COURT:    And are you pleading guilty on your own free will because you are guilty?

       DEFENDANT SCOTT:    Yes, sir.

       THE COURT:    Ms. Hillman, are you aware of any reason the Court should not accept Mr. Scott's guilty plea at this time?

       MS. HILLMAN:    I'm not, Your Honor.

.    .    .

       THE COURT:    Mr. Davis and Mr. Scott and Mr. Barnes, it is the finding of this Court in the case of the United States versus Rodney Davis, United States versus Jessie Scott, and the United States versus Nashon Barnes, that you are all fully competent and capable of entering an informed plea, that you are aware of the nature of the charge and the consequences of your plea, and that your plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. Your plea is therefore accepted, and each of you are now adjudged guilty of that offense.

       I'm ordering our Probation Office to prepare a presentence report in this case. This is a document about you and about this

case which will assist the judge in sentencing. The probation officer will interview you. If you wish, your attorney may be present at that interview. You and your attorney will have the opportunity to read that report before sentencing and to file any written objections to its contents. You and your attorney will also have the opportunity to address the sentencing judge at the sentencing hearing before the judge imposes sentence.

(*Id.* at 4, 5, 6, 7, 8, 9-10, 10-11, 11-12, 13, 15, 15-16, 16, 17, 17-18, 18, 19, 20, 21, 24-26 & 29)

      4.      During the initial sentencing hearing on April 21, 2008, the following occurred:

> THE COURT:      And you had filed two objections. Do you wish the Court to consider those further here today?

> MS. HILLMAN:      Yes, Your Honor. Actually, we did in our objections cite the case of United States versus Taylor from the Eleventh Circuit which we believe sets forth a good example of when the . . . six-point enhancement for intent to carry out a threat would apply.

> And the other issue we raised, I think, is merely a legal issue for the Court as to – there were two mailings but three envelopes, whether that constitutes two threats or three.

> THE COURT:      Mr. May?

> MR. MAY:    Your Honor, first of all, I'd like to introduce some exhibits. And the Defense was provided all of this information in discovery.

> MS. HILLMAN:      Yes, we have.

> MR. MAY:  . . . I don't know if the Court has actually

14

seen these or has just seen the Probation Report, but . . . Exhibit One is the first mailing, which was postmarked, I believe, on September the 14th from the Defendant (indicating). Exhibit Two is the second mailing from the Defendant that was postmarked, I believe, on September the 19th. And that had a letter inside of it and then a separate letter and envelope inside of that which I've marked as Government Exhibit Three, which is the separate envelope and letter that was in Government Exhibit Two. So, there are actually three separate letters but two mailings.

And then Government Exhibit Four is an interview that the FBI conducted with the Defendant at FCI, I believe it was, Coleman when questioning him about where the Defendant confessed to sending these letters and some statements the Defendant made during that interview.

So, I would like to introduce those exhibits first before addressing this objection.

THE COURT:      Any objection by the Defendant?

MS. HILLMAN:      No, Your Honor.

THE COURT:      Exhibits One through Four will be admitted.

.      .      .

MR. MAY:  .  .  . [O]ur response to the Defendant's objection to the PSI on the six-point enhancement for conduct evidencing an intent to carry out the threat[:] [I]t's the United States' position that the best evidence of the Defendant's intent was when the agents went to talk to the Defendant himself and asked him . . . and, quite frankly, gave the Defendant kind of an out to explain that he wasn't serious, that this was just something to blow off some steam.

The agent asked him if he really intended on trying to kill

Judge Butler when he gets released from prison or was he just trying to release some anger by writing the letters. Scott replied: "There are a lot of people that I want to do something to, but I have not made up my mind when or where I will do it." Scott was advised by the interviewing agent that it sounded as if he really intends on trying to kill Judge Butler once he gets released, and was asked to clarify his previous statement. This time, Scott just smiled and advised he had nothing more to provide regarding this investigation.

So, it's the United States' position that that interview is very good evidence on what the Defendant's intent was when he was asked after the fact about his intent and was given kind of an out by the agent, and he basically confirmed that he had an intent. And it's our position that that shows intent that he intended to carry out the threat.

THE COURT:        Ms. Hillman?

MS. HILLMAN:        Your Honor, I don't believe that Mr. Scott's statement to the agent is intent to carry out a threat. He's in a threshold institution. He's in custody. And what I find interesting about this case, especially comparing it to the case I cited to the Court, the Taylor case, if you look at Mr. Scott's conduct versus the conduct of the defendant in Taylor, you have a very different picture of intent to carry out.

Mr. Scott didn't purchase any weapons. Of course, he's in prison. But I mean, the defendant in Taylor had purchased weapons and attempted to hire a hit man, had stalked the victim, had driven by her house, . . . you know – in addition to just making the threats, there were actions evidencing an intent to carry out the threats.

Mr. Scott was in custody. He was in a correctional institution. Other than the threats themselves and him voluntarily talking to the agents, waiving his Fifth Amendment rights, admitting he committed a crime, other than that one question,

there's nothing. And even that one question, I submit, Mr. Scott, when you talk to him, is not . . . the clearest communicator.

So, I don't think that the one statement of there are a lot of people I'd like to do this to constitutes intent to carry out a threat, because you don't have anything else on the part of Mr. Scott. You don't have him making phone calls or writing letters or talking to other inmates about, hey, I want to do this to my judge, or I want to do that to my sentencing judge, or taking any other acts other than the actual threat to evidence his intent to carry out the threat.

Sure, he made the threat, and what Mr. May has introduced as documentary evidence are the threats themselves. That's where his base offense level comes from. And the interview, there's three pages of that interview where Scott tells what he did, how he did it, explains to the agents. He voluntarily waived his rights. He cooperated with the authorities.

And one sentence at the end is the Government's proof. That's all they have for intent to carry out the threat is the [one] sentence[.] . . .

It's our contention that compared with the proof that the Eleventh Circuit relied upon in the Taylor case, that's just simply not enough . . . .

THE COURT:       Well, I do find that the threats themselves are certainly outlined in the letters. And it's hard to ignore that statement when it is asked directly whether he intends to carry them out upon release . . . . So, I find there is sufficient basis to determine the intent to carry out the threats, and the objection is overruled.

And the second objection, Ms. Hillman?

MS. HILLMAN:       Your Honor, it's the objection as to whether there were two mailings in this case that contained three

17

envelopes. The question is whether it's two threats or three. It is the Defense['s] contention it is two threats because it's two mailings.

THE COURT:        Mr. May, anything further on that?

MR. MAY:   Just briefly, Your Honor. I don't think the guideline provision is restricted by the number of mailings, and there's no support for that argument. In this case, we actually have three separate and distinct letters which all contain threats. And indeed, each letter contained multiple threats. And Your Honor has those letters before you, and you could probably come up with 10 to 20 threats if you looked at each individual threat. And these were also very diverse threats, threats to kill Judge Butler, threats to kidnap Judge Butler's children, threats to blow up the Federal Building, kill the CIA, all Federal officers. So, there were a number of varied threats. And actually, you probably have multiple threats, but you certainly have at least three threats here.

.        .        .

But . . . we have three separate letters here, albeit two mailings, and we think this provision of the Guidelines is clearly met by the number and nature of the threats in this case.

.        .        .

MS. HILLMAN:      . . . Our objection simply was, and I think the basis on which the Court can decide it is, there were three envelopes and two mailings, whether that's three threats or two. . . . I don't think the contents of the letters are as important as the fact that there were two mailings, so were there two threats or three.

THE COURT:        Well, I do find . . . each letter contained a distinct, independent, separate threat, and find there's at least three threats contained within those letters. . . . I cannot

18

accept the significance of whether they were mailed on the same day or at the same time in the same box even. So, that objection will be overruled.

Any other objections you wish the Court to consider to the Presentence Report?

.    .    .

MS. HILLMAN:    . . . Mr. Scott is already serving a sentence, Judge. As I understand it, if Your Honor follows the advisory guideline sentencing recommendation, the Guidelines of those sentences stack.

If Your Honor is considering a consecutive sentence, we would ask the Court to sentence at the low end of the Guidelines because Mr. Scott, while he may have been cogent with the agents, I don't believe there's any ability or intent on his part to carry out those threats. Certainly, if you look at the entire interview, he was very forthcoming with the agents about what he had put in the envelopes, what he had said in the letters.

And I think it might be a high-end case if Mr. Scott had said, I don't want to talk to y'all, I don't want to explain anything. The fact that he did talk to the agents and explained what he did and admit his conduct merits a low-end sentence.

And I'd also ask the Court to consider a sentence to run concurrent in light of the fact that a 70- to 87-month sentence, and that is five years, 10 months on the low end. So, we would ask the Court to consider running those concurrent as the Guidelines are advisory.

THE COURT:        . . . Mr. May, anything you wish to offer at this time?

MR. MAY:  . . . Of course, the defendant is getting acceptance of responsibility . . . . But if you look at these letters,

19

Your Honor, they're really quite chilling. . . . [H]e states in his first letter, "I get out in 2007, so you need to watch your back every step of the way. I will get you killed one day."

And you look at the second letter, it's more of a general threat against all Federal judges: "Kill all Feds, judges, CIA, and blow up the Federal Building. I'm going to blow up your building."

And then the third letter, which was in the second mailing where he sends him the simulated anthrax, "I'm going to blow up your Federal Building [] first, and then I shall kidnap your kids and blow up that nice luxury car. I like that color interior. It's really neat. Here is your surprise. Happy Halloween." And he submits the simulated anthrax in that letter.

It's really very chilling, those letters. And the victim here, being in his shoes, who sentenced a defendant, performing his duties pursuant to law, and to be subjected to those kind of threats would just be harrowing. And the United States believes that a high-end sentence is appropriate in this case.

.     .     .

THE COURT:       Mr. Scott, Ms. Hillman, if you want to come forward, please. . . . Mr. Scott, anything that you wish to say before sentence is imposed?

DEFENDANT:       Yes, sir. Sir, first of all, I'd like to say I apologize to Judge Butler. I hope that you pass him this message. . . . And you know, I'd like to apologize to my mother for taking her through this trouble and my kids and my other family members. And that's it.

.     .     .

THE COURT:       Well, I do determine the Presentence Report to be accurate as it's been presented, and it has been considered by the Court with all its amendments. And under the

20

Sentencing Reform Act of 1984, it's the judgment of the Court that you be committed to the custody of the Bureau of Prisons to be imprisoned for a term of a hundred and twenty months. This is the statutory maximum allowed by law.

I have reviewed the Presentence Report and have considered all of the evidence presented here today and determine the applicable guideline range is 70 to 87 months. No grounds for departure under the Guidelines have been identified by the Government, Defense Counsel, or the Probation Office pursuant to the Sentencing Guidelines Manual.

However, this Court has also considered all of the factors listed in Title 18, United States Code, Section 3553, including the nature and the circumstances of the offense and the history and characteristics of the Defendant. Although Defendant was incarcerated when he committed this criminal conduct, his statements to the case agents indicate an intent to carry out the threats of violence against a United States District Judge, his family, Federal employees, and the Judicial System. The Presentence Report in determining the applicable guideline range has properly considered all of the factors in relation to the instant offense in arriving at the guideline range of 70 to 87 months.

However, the Court has considered the history and characteristics of the Defendant, finding the Defendant has a total disregard for authority and that his family was unable to control his behavior as a youth. This is evidenced by his conduct as a juvenile, overly aggressive, allegations of physical abuse against a foster father, allegations of possible sexual abuse by the Defendant in the foster home, setting fire to his clothes and school materials, uncapping a natural gas line with one of his peers, placing a butcher knife into an electrical outlet when he was angry with staff at the juvenile facility, destruction of school property when enraged.

It's further evidenced by his first adult conviction at the age of 18 for carjacking, which involved a firearm, resulting in

the term of imprisonment that he's now serving and led to his conduct in this particular case. And your violent past behavior outweighs any mitigating factors such as age, disadvantaged upbringing, in this case.

The need for the sentence imposed [is] to [] reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The Presentence Report reflects that the Defendant's lack of respect for authority figures has resulted in the Defendant's propensity to commit law violations. Mr. Scott has no respect for the law as evidenced by his criminal conduct in this case. Instead of focusing on his rehabilitation and becoming a productive member of society, Mr. Scott elected to act out on his anger over his prior criminal conviction. Obviously, the Defendant is not remorseful for his past criminal conduct and has no respect for the legal system. This is evidenced by your own criminal conduct in this case and your behavior since incarceration in 2001.

The Presentence Report reflects that the Defendant has admitted to threatening staff and being insolent through letters written to staff at the Federal Bureau of Prisons, in addition to other violations, a failure to obey an order, being in an unauthorized area, abusive and obscene language.

Based upon the seriousness of this criminal conduct, a lengthy term of imprisonment is the only just and reasonable punishment for this offense.

The Court has considered the second factor, to afford adequate deterrence to criminal conduct. A lengthy term of imprisonment is the only adequate deterrence in this case. And it's apparent from Mr. Scott's prior criminal arrest history and the instant offense that he will continue to violate the law.

The Court has also considered the necessity to protect the public from further crimes by the Defendant. The Defendant openly admitted during a psychological evaluation in 1998 that

22

he has temper tantrums which he cannot control. It was noted that he had limited self-control and poorly modulated behavioral expression of anger.

A psychological evaluation conducted in 1999 reflects the Defendant has significant difficulties with anger management, self-control, and behavioral responsibility. This has resulted in the Defendant's difficulty with the legal system. It was also noted the Defendant has not begun the process of disengaging from his previously learned inappropriate social behavior. The nature of his criminal conduct is becoming increasingly violent. In addition, Mr. Scott admitted using marijuana since the age of 12 every day, all day until his arrest in 2001.

The substance abuse history also increases the risk of continued criminal conduct. For these reasons, a lengthy term of imprisonment is needed to protect the public from further crimes by Mr. Scott.

I've also considered the need to provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The Defendant has mental health issues which are outlined in the Presentence Report. And even though the Defendant was in the juvenile justice system and incarcerated in the Federal Bureau of Prisons, he's been unable to control his anger, be responsible for his actions, and to demonstrate respect for others in the legal system. It is hopeful that with extensive treatment available through the Federal Bureau of Prisons, Mr. Scott will receive the treatment that he needs to be a productive member of society.

Upon review of all of the factors properly considered under Title 18, United States Code, Section 3553(a), and taking into account the advisory nature of the Sentencing Guidelines, I do conclude that this sentence, which deviates from the applicable guideline range and, for that matter, is outside of the guideline system, for the reasons already noted in the record, is reasonable and complies with the statutorily-defined purposes of

sentencing under Title 18 of the Code Section 3553(a).

I do find that this sentence meets the general goals of punishment, and hopefully it will act as a general and specific deterrence for others who might consider similar criminal conduct.

Now, this term is to be served consecutive to the sentence imposed in Docket Number CR-01-00083-001, which the Defendant is now serving.

I do recommend the Defendant be imprisoned at an institution where residential, comprehensive, substance treatment program and mental health treatment are available.

I do find the Defendant has no financial ability to pay a fine within the guideline range. However, based upon his ability to work while incarcerated as well as upon release, I am going to impose a fine in the amount of $1,000, which is due and payable immediately. Any payments made while incarcerated will be made through the Inmate Financial Responsibility Program.

And pursuant to statute, a $100 special monetary assessment is ordered, which is due and payable immediately.

And upon release, the Defendant will be placed on a period of supervised release for a term of three years. This term is to run concurrently with the term imposed in the previously cited case.

Within 72 hours of release from custody, you will be required to report in person to the probation office in the district to which you are released. While you're on supervised release, you will not commit any Federal, state, or local crimes. You're prohibited from possessing a firearm or any other dangerous device or to possess a controlled substance. In addition, you will be required to comply with the standard conditions of supervised

release as recommended by the  U. S. Sentencing Commission and on record with the Court in the Southern District of Alabama.

[The Court] order[s] that you comply with the following special conditions of supervised release: That is, you will pay any unpaid balance of the fine during your term of supervised release at a rate of not less than $40 per month, and that's within three months of release. As deemed necessary by the Probation Office, you will be required to participate in a program of drug treatment which may include testing. And as deemed necessary by the Probation Office, you will be required to participate in a program of mental health counseling and treatment.

And I would ask Ms. Hillman, any objections to the ultimate findings of fact or conclusions of law relating to the judgment of sentence other than those that we've discussed here?

MS. HILLMAN:      Yes, Your Honor. We would object to the sentence of 120 months as being basically double the advisory guidelines sentencing on the low end. We believe that is an unreasonable sentence.

.          .          .

[U]nder the old guideline procedures, if an upward departure [was being] contemplated, I would have gotten advance notice and been able to view all of this stuff and try to counter some of the arguments Your Honor has made. Because I didn't get any type of notice of an upward departure, and I don't even know under Booker if we need notice, it would be my position that we do, I'm unable and unprepared at this point to say these are the things that Your Honor ought to look at.

.          .          .

I'll just stick with my objection that we believe the sentence is unreasonable, that if Your Honor is going to go above the guideline, the advisory guideline sentence, we believe that

25

just as under the guideline framework, we should be entitled to notice, which is based in due process. We should be entitled to notice again.

.      .      .

THE COURT:      Well, Ms. Hillman, you are correct that we are all sort of operating in a bit of a gray area. However, the Court did not use anything outside of the Presentence Report in making its determination. . . . [T]he Guidelines might require notice, but since it's not technically a departure but a sentence outside of the Guidelines, and utilizing only the facts contained in the Presentence Report which you have had [to] study, review, and object [to] for a period of time . . . I don't think there's any need for notice beyond that.

.      .      .

MS. HILLMAN:      . . . I'm going to split hairs with you on the departure just a little bit, Judge, in that in paragraph 101 of the Presentence Report, it indicates that there's no information that the probation officer possessed which would indicate a departure from the prescribed guideline range. And while the Guidelines are advisory, and technically it's not a departure, it is definitely something that if you look at the Guidelines as being advisory and that being deemed reasonable, 70 to 87 months, a sentence of a hundred and twenty months is certainly not indicated by anything that I received, especially in light of paragraph 101.

THE COURT:      Well, again, I don't find the Guidelines to be necessarily appropriate in this case for the reasons that I've stated[.] . . . I suppose technically the sentence is outside the guideline system.

(Doc. 22, at 2-9, 10, 12-21, 22, 23, 24, 25 & 26; *see also* Doc. 16 (judgment in

a criminal case entered on May 3, 2005))

5.      Scott filed written notice of appeal on May 3, 2005. (Doc. 17)

The Eleventh Circuit Court of Appeals vacated Scott's sentence and remanded

for a new sentencing proceeding, finding that this Court erred in determining

that the defendant engaged in conduct evidencing an intent to carry out his

threats as required to warrant imposition of the six-level enhancement pursuant

to § 2A6.1(b)(1) of the Sentencing Guidelines. *United States v. Scott*, 441 F.3d

1322, 1327-1329 (11th Cir. 2006).

> If the district court had not erroneously applied the six-
> level enhancement, Scott would have had an offense level of 17.
> That level, when combined with a criminal history category of
> IV, would have placed him in the guidelines range of 37 to 46
> months, instead of the range of 70 to 87 months. The district
> court sentenced Scott to 120 months. Even though the district
> court spent a considerable amount of time explaining why Scott
> deserved the maximum sentence, we cannot say that the court,
> had it known of the appropriate range, would have sentenced
> Scott to the same severe sentence. The primary reason for our
> reluctance to do so is the substantial difference between the
> correct range and the one that was erroneously used as guidance.
> The top of the correct range (46 months) is just over half the top
> of the wrong range (87 months). The step from 46 months to 120
> months is significantly greater than the step from 87 months to
> 120 months. Because it is unclear how the court would have
> acted, we must vacate the sentence and remand to the court for
> re-sentencing on this ground. In taking this action, we note that
> if it had wished to do so the district court could have stated that
> it would reach the same sentence regardless of how the disputed
> § 2A6.1(b)(1) issue was decided. A statement like that would
> have convinced us the error was harmless.

> In vacating the sentence and remanding for a new

sentencing proceeding, we do not mean to imply that the district
court on remand cannot reach the same sentence as it did before,
provided that it corrects the one error identified in this opinion.

*Id*. at 1329-1330 (internal citation omitted).

6.      Scott was re-sentenced on November 13, 2006. (Doc. 45)

THE DEFENDANT:        . . . Thank you for giving me
an opportunity to speak on my behalf. I would like to apologize
for the problems I have caused. You see direct into my heart you
know how I feel about the situation. I know in the past I have
been, you know, trouble off and on. I know I did, as a child, but
being the man I am today I accept my responsibility. My drug
problems, being given away by my mother, sexual abuse, that's
all in the past. I'm willing to help myself. Not just for me but for
my children. I want people to judge me by what they think of me.
. . . I say I deserve a sentence, you know, but I don't think I
deserve ten years.

.      .      .

THE COURT:        I do find the presentence report to be
accurate as we have modified it here today, in accordance with
the directions of the 11th Circuit. And it is the judgment of the
Court, having considered the advisory nature of the guidelines
and all of those factors considered in Title 18, United States
Code, Section 3553(a), it's the judgment of the Court that you be
committed to the custody of the Bureau of Prisons to be
imprisoned for a term of 120 months.

I'm not going to restate all of the factors that I did at the
previous sentence, but I am simply going to incorporate them into
the reasoning for this sentence.

This is an attack on the judicial system, which is the very
glue that holds this civilized society together. And while I am
sympathetic toward the defendant and his past, as we have

28

discussed here today, that does not tell me what is going to happen in the future. And one of the legitimate reasons of sentencing is that of restraint and protection of society in general. And no action has indicated that he would not act out in these inappropriate ways, to put it mildly, in the future.

I do note in addition to the other comments that one of the reports, which admittedly was 1999, talks about it is clearly evident that Jesse has not accepted responsibility for his actions and he has not begun the process of disengaging from his previously learned inappropriate social behavior. And I don't find anything in this record, to this point, to demonstrate that that is an inaccurate assessment of Mr. Scott and his present circumstances.

So, again, I do adopt all the reasons given, which at the time I stated w[]ere the basis for considering that the maximum sentence was necessary. And to recognize that that was early on after the Booker case and we didn't know the magic words to say. But I thought it would be fairly clear that I thought the maximum sentence was necessary for those reasons that I attempted to carefully outline in the statement of sentence.

And, again, I have reviewed all the factors of 3553(3) and the advisory nature of the guidelines. And I do find that this sentence is reasonable given the circumstances and conditions of this defendant and the actions that he chose to take.

I do find this sentence meets the general goals of punishment and hopefully it will act as a deterrence to anyone else that night consider similar criminal conduct. Which is another important aspect of this sentence, in the light of, as I said, it is an attack on the judicial system itself, which is vital and necessary itself to the maintenance of a civilized society.

This term is to be served consecutively to the sentence imposed in docket number CR-01-00083-001 which you were originally sentenced to on that carjacking case. And I am not

going to designate a specific place, but I leave it to the Bureau of Prisons to imprison this defendant in an institution where the residential comprehensive and substantive treatment program and mental health counseling and treatment are available.

I do find no ability to pay a fine within the guideline range. However, based upon the ability to work while incarcerated, as well as upon release, I am going to impose a fine in the amount of $1,000, which is due and payable immediately. And interest will be waived on that fine. Any payments made while incarcerated will be made through the inmate financial responsibility program. And pursuant to statute there is a $100 special monetary assessment ordered which is due and payable immediately.

Upon release you will be placed on a period of supervised release for a term of three years. And this term is to run concurrently with the term imposed in the previous cited case. Within 72 hours of release you will be required to report in person to the probation office in the district to which you are released.

And while on supervised release you will not commit any federal, state, or local crimes. You are prohibited from possessing a firearm or any other dangerous device or to possess [a] controlled substance. And you will be required to comply with the standard conditions of supervised release adopted by the Southern District of Alabama.

And I do order that you comply with the following special conditions of supervised release. That you pay any unpaid balance of the fine during your term of supervised release at a rate of not less than $40 per month, to commence three months after release. As deemed necessary by the probation office . . . you will participate in a program of drug treatment, which may include testing and you will be required to participate in a program of mental health counseling and treatment.

(*Id.* at 17-18 & 18-22; *see also* Doc. 38 (judgment))

7.     On December 6, 2006, the defendant again filed written notice of appeal. (Doc. 41)[1] The Eleventh Circuit Court of Appeals affirmed Scott's sentence in an unpublished per curiam opinion issued on August 29, 2007. (Doc. 48)

On appeal, Scott argues that his sentence is procedurally unreasonable because: (1) the district court, whose primary justification for the sentence was to deter others from committing similar crimes, did not cite any authority demonstrating that his lengthy sentence would have a deterrent effect on others; (2) the district court on remand failed to meaningfully consider the corrected guideline range; (3) the district court's act of resentencing Scott to the same prison term does not promote respect for the law because it sends the message that a successful appeal "is a meaningless endeavor"; and (4) the district court failed to consider Scott's "traumatic" personal history and compared Scott to non-offenders rather than to similarly-situated defendants.

Scott also asserts that his sentence is substantively unreasonable because: (1) the large deviation from the guideline range was not supported by compelling circumstances as the threats against the judge were largely preposterous and were the product of his "disturbed mind"; (2) specific deterrence of Scott would be better provided through mental health services; and (3) we have reversed below-guideline sentences where the variance was similar to the one in this case and should attempt to have "even-handed standards of reasonableness" for upward and downward variances.

---

[1]     Prior to filing written notice of appeal, the defendant filed a motion for reconsideration of judgment on November 21, 2006 (Doc. 40); this motion was denied on December 28, 2006 (Doc. 47).

We review the final sentence imposed by the district court for reasonableness. Our review for reasonableness is deferential. Unreasonableness may be procedural, such as occurs when the procedure the district court used does not meet the requirements found in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005), or it may be substantive in nature. After Booker, a district court, in determining a reasonable sentence, must consider the correctly calculated advisory guideline range and the factors set forth in 18 U.S.C. § 3553(a). After correctly calculating the advisory guideline range, the district court may impose a more severe or lenient sentence, so long as the resulting sentence is reasonable.

In reviewing a sentence for reasonableness, we consider the factors outlined in § 3553(a) and the district court's reasons for imposing a particular sentence. The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the sentencing guidelines range; (5) pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; (7) and the need to provide restitution to victims. "[T]here is a range of reasonable sentences from which the district court may choose[,]" and the burden of establishing that the sentence is unreasonable in light of the record and the § 3553(a) factors lies with the party challenging the sentence.

Here, the sentence imposed by the district court was procedurally reasonable. At the initial sentencing hearing, the district court discussed the § 3553(a) factors at great length, and it incorporated that analysis during the sentence hearing following remand. At the second sentence hearing, the district

court also considered the correct guidelines range of 37 to 46 months, as well as the advisory nature of the guidelines. Additionally, the court acknowledged Scott's disadvantaged and troublesome upbringing, but found that his "violent past behavior" and inability to begin "the process of disengaging from his previously learned inappropriate social behavior" weighed in favor of the statutory maximum sentence. Moreover, the court stated that the sentence was appropriate given the extremely serious nature of the offense and the need to protect the public from Scott. Further, the district court noted that the sentence would deter others from committing similar crimes. The district court was not required, as Scott argues, to cite authority for the proposition that lengthy sentences deter criminal conduct; it is enough that deterrence is one of the § 3553(a) factors. Finally, the district court observed that Scott should be able to obtain the substance abuse treatment and mental health care that he requires while serving his sentence.

The district court's decision to impose the same sentence on remand does not, as Scott suggests, send the message that a successful appeal "is a meaningless endeavor." At the outset of the second sentence hearing, the district court acknowledged the correct guidelines range and then proceeded with its discussion of the § 3553(a) factors. Furthermore, we explicitly allowed for the imposition of the same sentence after remand in our prior published decision in this case. Indeed, we also noted "that if it had wished to do so the district court could have stated that it would reach the same sentence regardless of how the disputed [guidelines] issue was decided. A statement like that would have convinced us the error was harmless." Because the district court carefully considered the correct advisory guideline range and the § 3553(a) factors in reaching its decision, the sentence is procedurally reasonable.

The 120-month sentence is also substantively reasonable. Scott's offense was particularly serious. He threatened to kill a federal judge and suggested that he would employ explosives to accomplish the task. He also threatened to kidnap the Judge's

children and included a suspicious substance with the threatening letter. These threats cannot be dismissed as "jailhouse banter" or merely the inconsequential product of a disturbed mind. They were specific, and when questioned by federal agents Scott did not disavow the threats. Instead, he gave a cryptic response to the agents' questions and smiled at them.

Scott's argument that future criminal conduct by him would be better prevented by treatment than incarceration is unpersuasive. It is not an "either or" proposition. As the district court noted during the sentence hearing, the Bureau of Prisons should provide treatment options to address his substance abuse problem and mental health issues. Scott can avail himself of these services during the 120-month period of incarceration and afterward while on supervised release.

Finally, Scott's argument that we have reversed as unreasonable the imposition of below-guidelines sentences with variances smaller than the upward variance in this case misses the point of individualized sentences. At each sentence proceeding, the district court must analyze the § 3553(a) factors with regard to a defendant's own characteristics and the specific crime involved. Neither <u>Booker</u> nor any other decision require that we compare the variance in this case to variances in cases involving different crimes and defendants with different characteristics. The aim of the sentencing guidelines is to produce consistency across sentences for similar crimes committed by defendants with similar characteristics. That we have reversed other sentences for dissimilar crimes committed by dissimilar defendants is of no moment.

**AFFIRMED.**

(*Id.* at 4-9 (internal citations omitted))[2]

---

[2]     This judgment affirming Scott's sentence was issued as mandate on September 28, 2008. (Doc. 48)

8.      On August 4, 2008, Scott filed the present collateral attack on his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 49) Therein, petitioner raises the following grounds which he claims entitle him to relief: (1) his Fourth Amendment rights were violated when FBI agents questioned him before advising him of his *Miranda* rights; (2) his guilty plea was involuntarily made because of counsel's promises of a lesser sentence;[3] and (3) ineffective assistance of trial counsel due to counsel's (a) failure to investigate matters centered around statements made to FBI agents, (b) the failure to insure that petitioner would be sentenced to only 37 to 46 months upon pleading guilty, and (c) the failure to negotiate an agreed-upon sentence with the government. (*Id*. at 4)

9.      The United States filed its response in opposition on September 24, 2008. (Doc. 51) Therein, the government argues that Scott has waived the first ground of the petition (*id*. at 8-10), that his attack on the voluntariness of his plea has been procedurally defaulted (*id*. at 10-11), and that his allegations of ineffective assistance of counsel have been waived (*id*. at 11-13). Scott was ordered to file his reply to the government's response by October 29, 2008.

---

[3]      "Movant contends he would not have ple[]d guilty if not for the promises of 37-46 months of imprisonment instead of the 70-87 months if he did not plead guilty. Counsel nor Movant forseen the 120 months Movant received." (Doc. 1,a t 4)

(Doc. 50) To date, petitioner has not filed a reply to the government's response in opposition. (*See* Docket Sheet)

## **CONCLUSIONS OF LAW**

1.      28 U.S.C. § 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

2.      Once a criminal defendant enters a guilty plea, he waives all non-jurisdictional challenges to the conviction's constitutionality and only an attack on the voluntary and knowing nature of the plea can be raised.  *See McMann v. Richardson*, 397 U.S. 759, 772, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). Stated differently, "a voluntary and intelligent plea made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984). Therefore, when a § 2255 motion is filed collaterally challenging

convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

3.      Scott's claim that his constitutional rights were violated when FBI agents questioned him before reading him his *Miranda* rights,[4] *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was waived by virtue of the entry of his counseled guilty plea. *Spear v. Secretary, Department of Corrections*, 2006 WL 1281333, *13 (M.D. Fla. 2006) ("A defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights, including the privilege against compulsory self-incrimination, the right of confrontation, the right to a jury trial, the right to a speedy trial, and the right to require the prosecutor to prove the crime beyond a reasonable doubt."); *see United States v. Farquharson*, 252 Fed.Appx. 982, 2007 WL 3226963, *1 (11th

---

[4]      While Scott alleges that the agents' conduct violated his Fourth Amendment rights, it is clear that petitioner is actually asserting a violation of his Fifth Amendment rights. *See Withrow v. Williams,* 507 U.S. 680, 688, 113 S.Ct. 1745, 1751, 123 L.Ed.2d 407 (1993) ("The Self-Incrimination Clause of the Fifth Amendment guarantees that no person 'shall be compelled in any criminal case to be a witness against himself.' [] In *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), the Court held that the Clause barred the introduction in federal cases of involuntary confessions made in response to custodial interrogation.").

Cir. 2007) ("As for Farquharson's first argument, because he entered an unconditional guilty plea, thus waiving all nonjurisdictional defects, including any challenge to the district court's denial of his motion to suppress, we will not consider the claim."); *United States v. Crumpton*, 222 Fed.Appx. 914, 2007 WL 879807, *2 (11th Cir.) (""Our circuit law is clear that when a defendant enters a voluntary, unconditional guilty plea, he waives the right to challenge all nonjurisdictional defects in the proceedings, which would include a court's denial of a motion to suppress."), *cert. denied*, __ U.S. __, 128 S.Ct. 240, 169 L.Ed.2d 158 (2007). Accordingly, this Court need not consider this claim on collateral review. *See Farquharson, supra*.

4.     The undersigned agrees with the government that Scott has procedurally defaulted his claim attacking the voluntariness of his plea since he did not raise that issue on direct appeal. In *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998), the Supreme Court held that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." In *Bousley*, as in the present case, the petitioner challenged his sentence on appeal but did not contest the validity of his plea. *Id*. Therefore, the Supreme Court held that petitioner had procedurally defaulted the claim he sought to press. *Id*.

38

Accordingly, absent a showing of cause and prejudice, or actual innocence, this

Court cannot consider the merits of petitioner's claim.

> When a defendant raises a constitutional claim on collateral
> review that he failed to raise in the trial proceedings or on direct
> appeal, he bears the burden of establishing cause and actual
> prejudice resulting from the error or actual innocence to excuse
> the defaults. To show cause for not raising a claim in an earlier
> proceeding, a defendant must show some external impediment
> preventing counsel from constructing or raising the claim. To
> establish prejudice, the defendant must prove that the errors at
> trial actually and substantially disadvantaged his defense so that
> he was denied fundamental fairness. This is a heavier burden
> than the burden of establishing plain error on appeal. The futility
> of raising a claim does not constitute sufficient cause to excuse
> the default.

*Dasher v. United States*, 2008 WL 785563, *4 (M.D. Fla. 2008) (internal

citations and quotation marks omitted).

5.    In this case, petitioner has not filed a substantive reply to the

United States' response in opposition;[5] therefore, it is found that the cause and

prejudice exception to the procedural default doctrine is not applicable in this

case. *Cf. Macklin v. Singletary*, 24 F.3d 1307, 1313 (11th Cir. 1994) (in abuse

of the writ case, appellate court suggests that habeas courts need perform no

analysis when the petitioner fails to argue an exception to application of the

doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085

_____

[5]    This claim was certainly known by Scott prior to his direct appeal and he has not
alleged any reason to excuse his failure to raise it on appeal.

(1995); *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) (court addressed only the single cause argument proffered by the petitioner). [6]

6.     The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the *Murray v. Carrier* standard. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see Bousley, supra,* 523 U.S. at 623, 118 S.Ct. at 1611 (citing *Murray v. Carrier* and *Schlup v. Delo*). That standard requires Scott to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence-- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id*. at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have

_____

[6]     It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

convicted him in the light of the new evidence."). Scott has not come forward with any evidence which establishes his actual innocence and thereby undermines his conviction on the charge of threatening a federal official. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

7.     The Court turns to Scott's final claim of ineffective assistance of counsel. In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

> To succeed on such a claim, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687, 104

> S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).[7]  In addition, the
> defendant must establish that "counsel's constitutionally
> ineffective performance affected the outcome of the plea
> process." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.  In other words,
> . . . [a petitioner] "must show that there is a reasonable
> probability that, but for counsel's errors, he would . . . have
> pleaded [not] guilty and would . . . have insisted on going to
> trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

*Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (footnote, brackets and

ellipses added), *cert. denied sub nom. Coulter v. Jones*, 516 U.S. 1122, 116

S.Ct. 934, 133 L.Ed.2d 860 (1996).

8.     When applying the *Strickland* standard, it is clear that courts "are

free to dispose of ineffectiveness claims on either of its two grounds."  *Oats v.

Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied

sub nom. Oates v. Moore*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243

(1999); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004)

("[O]nce a court decides that one of the requisite showings has not been made

it need not decide whether the other one has been.").

9.     Scott first contends that counsel was ineffective in failing to

investigate matters centered around statements made to FBI agents before he

was advised of his *Miranda* rights. Petitioner has not established either cause

---

[7]     "When analyzing ineffective-assistance claims, reviewing courts must indulge a
strong presumption that counsel's conduct fell within the wide range of reasonably professional
assistance."  *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (citations omitted).

42

or prejudice in relation to this specific claim. First, Scott has not demonstrated counsel's deficiency because he has not established that the Court would have suppressed the statements he made to the FBI agents had same been challenged nor has he established that any suppression of his statements would have destroyed the government's case against him thereby leading to his acquittal following a jury trial. Because of this, petitioner has not and cannot establish that he would have pleaded not guilty and insisted on going to trial rather than plead guilty. If petitioner had chosen to go to trial and been convicted of all charges, some six in number, he would have faced the possibility of a much lengthier sentence; in fact, he faced life imprisonment with respect to Counts 3 and 4 of the indictment and a total of another 40 years with respect to Counts 1, 2, 5 and 6. (*Compare* Doc. 1, Penalty Page *with* Doc. 21, at 12) To say the least, Scott faired much better in pleading guilty and having a 10 year sentence tacked onto the sentence he was already serving, as opposed to facing several life (and other term) sentences upon conviction of all charges. Accordingly, prejudice is absent in this case.

10.     Petitioner next contends that trial counsel failed to keep promises made that he would be sentenced within the range of 37 to 46 months if he plead guilty to the indictment. The undersigned will not reiterate its prejudice

analysis; it is sufficient to note again that Scott has not and cannot establish prejudice in this case. Moreover, petitioner cannot establish counsel's deficiency in this regard inasmuch as he specifically acknowledged during his plea colloquy his understanding that the maximum sentence that could be imposed was 10 years, that the sentence imposed could be different from any estimate given by his attorney, that the sentencing judge had the authority to impose a harsher sentence than that dictated by the applicable guidelines, and that he would be unable to withdraw his guilty plea in the event the sentence imposed was more severe than expected. (Doc. 21, at 12, 17, 17-18 & 19) There can be no doubt but that trial counsel expected a sentence within the range of 37 to 46 months, rather than ten years, but all involved understood, as reflected by petitioner's responses during the guilty plea colloquy, that the Court could sentence petitioner to the maximum of ten years.

11.     Petitioner's final contention is that counsel failed to negotiate "an agreement with the government for a lesser sentence." (Doc. 49, at 4) Again, the undersigned's focus is upon the first prong since, as aforesaid, the prejudice analysis is the same. Scott has not shown that counsel was deficient in failing to reach an agreement with the government as to an appropriate "lesser"

sentence because,[8] as should by now be clear, the Court would not have been bound by any such "agreement" and there is nothing in the record which would indicate that the Court would have sentenced Scott to a shorter term at the behest of the government. In light of the foregoing, petitioner's ineffective assistance of counsel claims need fail.

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence should be **DENIED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 3rd day of November, 2008.

 s/WILLIAM E. CASSADY_____
**UNITED STATES MAGISTRATE JUDGE**

---

[8]     Scott has pointed to nothing which would indicate that the government was amenable to agreeing that he should receive a "lesser" sentence. In fact, the government at all times urged a high-end sentence. (*See* Doc. 22, at 13-14)

45

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)©; *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.


                              s/WILLIAM E. CASSADY
                              **UNITED STATES MAGISTRATE JUDGE**